TIMOTHY P. NEWELL AND CHARLES E. RIDGEWAY v. AARON CLARK, CHARLES H. SMITH AND JOHN W. WESTCOTT.

1. The doctrine of the common law is that the goods of a tenant cannot be taken in distress for rent whilst in the custody of the law, but that to place the tenant's goods *in custodia legis*, by an execution and levy, the sheriff must not only take, but must also keep, the actual possession of the goods, and the landlord's right to distrain is not suspended unless the sheriff takes possession of the goods, and will be revived if the officer withdraws from the premises without leaving a bailiff in charge.

2. The law of this state recognizing the validity of a levy without actual seizure and continued possession of the goods, it would be impracticable to adopt the common law rule that goods are not *in custodia legis* unless the sheriff be in actual possession. Legal analogy would place a distress for rent on the same footing as the levy of a second execution; the distress would be subject to the rights of the execution creditor, but would not be illegal and void. The sheriff, being constructively in possession, would have the right to sell, first making out of the goods the rent and then the execution debt. But if the sheriff, on notice of the rent, refuses or neglects to proceed with his execution and sell, his refusal or neglect will be construed as a withdrawal from possession, and the landlord may then proceed to appraise and sell, for the satisfaction of his rent.

3. Goods of a tenant on the premises demised were levied on by the sheriff, by virtue of an execution against the tenant, and were left in the tenant's possession; the landlord then made distress upon the same goods, for rent. In an action on the case by the landlord, against the tenant

Newell v. Clark.

and a third person, for selling the goods distrained on—*Held*, that the defendants could not justify under the levy, the sale of the goods being made without the knowledge or authority of the sheriff.

4. The property in goods taken in execution is not changed by the levy, so that thereafter they are the property of the sheriff, within the meaning of section 8 of the act concerning distresses, which allows a distress for rent to be made on the goods of the tenant, and "not of any other person." *Rev.*, *p.* 309. A sheriff, by his levy, acquires a special property in goods levied on, but the title of the defendant in execution is not thereby wholly divested.

5. No precise act or form of words is essential to a distress, and a distress may be made without actual seizure. Where the landlord went upon the premises demised, and where the tenant's goods were, and made an inventory of the goods and put up a notice of distress on the premises, and served the notice of the distress upon the tenant—*Held*, that these acts amounted to a distress.

6. An action for treble damages and costs, under section 10 of the act concerning distresses, (*Rev.*, *p.* 310,) cannot be maintained unless the goods distrained have been "impounded or otherwise secured." For acts of interference with the distress before the goods have been impounded or secured, the landlord's remedy is by action at common law for single damages.

7. Where a landlord engaged in making a distress is interfered with by the tenant and others, and prevented from completing the distress, by impounding or otherwise securing the goods, he may withdraw and give up the distress, and hold the wrong-doers in damages for the amount that he might have realized out of the distress which was wrongfully interrupted.

8. Where a plaintiff has shown substantial grounds for a recovery, and the only error in the verdict is in the amount of damages, the verdict will be allowed to stand for the damages the plaintiff is entitled to, if he will remit the excess.

9 *Hamilton* v. *Hamilton*, 1 *Dutcher* 544, disapproved.

On case certified from the Camden Circuit.

In February, 1882, the plaintiffs demised to Aaron D. W. Clark certain premises for the term of one year from March 25th, 1882, for the yearly rent of $600, payable in equal monthly payments.

On the 5th of January, 1883, Aaron Clark recovered a judgment against Aaron D. W. Clark, the tenant, on which execution was issued on the same day, and delivered to the

sheriff of the county of Camden. John W. Westcott was the attorney of the plaintiff in execution. The execution was returned with a levy on the tenant's goods and chattels on the premises demised. Subsequently, the goods levied on were advertised for sale on the premises, on the 19th of January, 1883, and on that day were sold at public auction. Aaron Clark, John H. Smith and John W. Westcott participated in the sale. On the day the property was advertised for sale, the plaintiffs, as landlords, made a distress of the same goods, for three months' rent, due January 9th, 1883, and unpaid, amounting to $155.20. Notice of the distress was given to Aaron D. W. Clark, the tenant, and to the defendants, Aaron Clark, Smith and Westcott. These persons, notwithstanding the landlord's notice of the distress, proceeded with the sale, and all the goods except a bar-pump were sold and removed from the premises. Newell and Ridgeway, the landlords, sued Aaron Clark, John H. Smith and Westcott, in an action on the case, under the tenth section of the act concerning distresses, to recover damages for a pound-breach. *Rev., p.* 310.

A verdict was taken, under the direction of the court, for three times the amount of the rent due. A rule to show cause was then granted, and the case certified to this court, for its advisory opinion on the following points :

1. Whether, under the evidence in the cause, the goods were, at the time the alleged distress was made by plaintiffs, legally liable to be distrained for rent.

2. Whether the proceedings taken by the plaintiffs, as shown by the evidence, constituted a legal distress and impounding of the goods.

3. Whether the language, conduct and acts of the defendants, as shown by the evidence, constituted pound-breach or rescous.

4. Whether the evidence proved that the goods distrained were, in whole or part, the property of A. D. W. Clark.

5. Whether any damages were shown by the evidence, and if so, what amount?

6. Whether the rule to show cause should be made absolute or discharged.

Argued at February Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and VAN SYCKEL.

For the plaintiff, *Alfred Hugg*

For the defendants, *D. J. Pancoast* and *J. W. Westcott.*

The opinion of the court was delivered by

DEPUE, J.   It was contended that the goods, being under execution and levy at the time of the distress, were not distrainable, and that therefore the distress was wholly illegal and void.

This contention was placed on two independent grounds. First, that the goods, by the execution and levy, were *in custodia legis*, and therefore, on common law principles, the landlord was debarred from proceeding against them by distress for any cause.   Second, that, by the levy, the goods and chattels became the property of the sheriff, within the meaning of the statute which authorizes the landlord to seize, as a distress for rent, only the goods and chattels of his tenant, and not of any other person.   *Rev.*, p. 309, § 8.

The sheriff's levy was made from a list furnished by the attorney of the plaintiff in execution, at the instance of the defendant in execution.   The list was forwarded to the sheriff's office, and the levy was made by making an inventory from the list and annexing it as a return to the execution. The sheriff did not take any possession of the goods.   They were left upon the premises, and neither the sheriff nor his deputy ever saw them.   The inventory and return, in law, constituted a sufficient levy, although the sheriff did not have the property actually in view or under his control.   *Caldwell* v. *Fifield*, 4 *Zab.* 150; *Dean* v. *Thatcher*, 3 *Vroom* 470.   But, though a levy, by an inventory, without any possession of the goods and chattels by the officer, may be a lawful execution

of the writ, it does not follow that, by such a procedure, the property so levied on was placed *in custodia legis,* so that a distress made after levy would, for that reason, be illegal and void.

The doctrine of the common law, invoked by the defendants, is formulated in these words : " Goods in the custody of the law are not distrainable ; *therefore,* goods distrained for damage feasant cannot be taken for rent, nor goods in a *bailiff"s hands on an execution,* nor goods seized by process at the suit of the king." 2 *Chit. Burns' Just.* 281, "*Distress,*" 2 ; *Gilb. Dis.* 50 ; *Woodf. L. & T.* 475. At common law, an execution levied without actual and continued custody by the officer, of the goods levied on, was inefficacious and void. Hence, it was said that goods under execution are in custody of the law and are not distrainable. But an examination of the authorities will show that the principle is that the tenant's goods are not subject to distress whilst in custody of the law, and that to place a tenant's goods *in custodia legis,* by an execution and levy, the sheriff must not only take, but must also keep, actual possession of the goods, and the landlord's right to distrain is not suspended unless possession of the goods is taken by the sheriff, and will be revived if the officer withdraw from the premises without leaving a person in charge. 1 *Sm. Lead. Cas.* 671, note to *Simpson* v. *Hartopp.* " Goods seized in execution cannot be distrained whilst they are in the custody of the law." *Arch. L. & T.* 117.

*Blades* v. *Arundale,* 1 *Mau. & Sel.* 711, is the leading case on the subject. The action there was trespass by a sheriff against the landlord for distraining and selling goods which the sheriff had levied on and left in the tenant's apartments. It appeared that the sheriff's officer went to the defendant's lodgings and informed him that he came to levy on his goods, but made no manual or actual seizure except laying his hands on a table, saying, " I take this table," and then he locked up the warrant in the table drawer, took the key, and went away without leaving any officer in possession. The defendant subsequently distrained the goods for rent. No notice of the

rent was given, and it was conceded that the sheriff's seizure, under the execution, was good. A non-suit was directed, and on rule to show cause the non-suit was sustained, on the single point that the sheriff was not in possession at the time of the distress. It was contended, on behalf of the plaintiff, that, as it was admitted that the sheriff had once made a good seizure, he must be considered as constructively in possession at the time of the distress. The court unanimously held otherwise. Lord Ellenborough said : " The question here is whether, by quitting the premises after the seizure, and leaving no one in charge of the goods, he [the sheriff] did not relinquish the possession. If he did, I am not aware of any case where, upon an abandonment of the possession by the sheriff, the goods have still been holden to remain in custody of the law, so as to make the party distraining them a trespasser. In this case, what is there to show a continuance of the possession after the officer who made the seizure withdrew? The locking up of the writ in the drawer certainly cannot amount to it; therefore, the possession, as soon as the sheriff abandoned it, reverted back to the original owner." Blades v. Arundale has never been questioned. On the contrary, it has been uniformly cited with approbation for the doctrine that if the sheriff relinquishes possession after seizure of the tenant's goods, under his execution, and leaves no one in possession, the goods may then be distrained for rent. 1 *Add. Torts* 508, § 723; *Bradb. Dis.* 84; *Sew. Sher.* 251. Indeed, the method by which a sheriff, having notice of the rent, discharges himself from the obligation to make the landlord's rent under his process before he makes the money due on his execution, and from liability to the landlord in damages for remaining in possession, and thereby delaying or prejudicing the latter in the collection of his rent, is by withdrawing from possession, and thus enabling the landlord to exercise his right to distrain. *Com. L. & T.* 392 ; *Tayl. L. & T.,* § 603.

There were reasons at common law why goods under execution should be wholly exempt from process of distress,

Newell v. Clark.

which do not now exist.   At that early period, the landlord's distress was only a means of coercing his tenant into the payment of rent by seizing his goods and holding them in custody until the rent was paid, without any power to make the rent by a sale of the goods taken in distress.   And after the right to appraise and sell was given by 2 *W. & M.*, c. 5, and the landlord was given a remedy by notice to the sheriff, by 8 *Ann*, c. 14, no great inconvenience would be sustained by depriving the landlord of his right to distrain whilst the tenant's goods were under execution.   The requirement of the law that the sheriff, to retain the lien of his levy, must take the goods into his possession or leave his bailiff in charge, would insure a speedy removal or sale of property under execution, or a withdrawal from possession.   Under our law, which allows an officer to retain the lien of his levy without actual possession of the goods, and permits him to leave the property in the possession of the defendant in execution, a tenant, by means of a judgment, execution and levy, might practically secure to himself the possession and use of his property, and exclude the landlord from the collection of his rent.

The law of this state recognizing the validity of a levy without actual seizure and continued possession, it would be impracticable to adopt the common law rule that goods are not *in custodia legis* unless the sheriff be in actual possession. Goods already under execution may be levied on by a subsequent execution creditor.   The levy under the second execution takes the property subject to the lien of the prior execution, but the levy is not illegal and void.   Legal analogy would put a distress—which is only process for the collection of rent—on the same footing.   The landlord's distress would necessarily be subject to such legal rights as the execution creditor obtained in law by his levy, and the sheriff, being constructively in possession, would have the right to sell, first making out of the property the rent and then the execution debt.   But if the officer, on notice of the rent, refuses or neglects to proceed with his execution and sell, his neglect or refusal must be construed as a withdrawal from possession,

and the landlord may then proceed to appraise and sell, for the satisfaction of his rent. In no other way can the rules of the common law, with respect to levies under execution and distress for rent, be made to harmonize with our peculiar practice with respect to executions.

There is no principle which would put a distress for rent on goods under execution in a different position from that of a levy under a second execution, and make the distress illegal and void as to the tenant and third persons. Nor is there any authority to that effect. In all the cases I have found where the doctrine that goods in the custody of the law are not distrainable has been applied, the question has arisen in actions, either by the sheriff, in trespass or trover, for taking the goods from his possession, or by a purchaser who acquired title under the sheriff at a sale under his execution.

In *Hamilton* v. *Hamilton*, 1 *Dutcher* 544, the landlord's proceeding was against the sheriff. Unsatisfactory as that case is in its reasoning and in the result, it is not in favor of these defendants. The court there held that, if the tenant removed the goods from the premises, the sheriff might then sell them without being liable to pay the rent, but it did not decide that the tenant or strangers might, with impunity, remove the goods from the landlord's distress, and deprive him of his rent because the goods were under levy under the sheriff's execution. The statute allowed the landlord, within the space of thirty days, to follow goods removed by the tenant whose rent was unpaid, and to seize and sell them as if they had been distrained upon the premises demised, no matter how or for what purpose the goods were removed, or whether the rent was actually due or not when the removal was effected, saving only the rights of purchasers to whom the goods had been sold *bona fide* or for a valuable consideration before the seizure. *Rev., p.* 311, § 14; *Weiss* v. *Jahn*, 8 *Vroom* 93–96. The landlord followed the goods within the time and in the manner prescribed by law. The learned justice who prepared the opinion in Hamilton v. Hamilton placed undue stress on the fact that the goods had been

removed before the sale, and that the removal was by the tenant and not the sheriff. Under the statute of Ann, the .sheriff was bound to pay the rent, although notice of the landlord's claim was not given until after he had removed the goods, provided it be given whilst the goods or the pro-.ceeds remained in his hands. *Arnitt* v. *Garnett, 3 B. & Ald.* 440; *Wats. Sher.* 193. The English courts held that the .removal of the goods by the sheriff from the premises was the only act that made the sheriff liable, and that a sale of .the goods by the sheriff on the premises would not make him liable for the rent. These decisions were unchallenged when Hamilton v. Hamilton was decided. But, in the later case of *Ryerson* v. *Quackenbush,* 2 *Dutcher* 236, this court held that a levy and sale of the tenant's goods upon the prem-ises by the sheriff was a removal, within the meaning of the statute, whether the goods were actually taken from the prem-ises or not, on the ground that such a sale effected the very evil which the statute was designed to remedy. The land-lord, in Hamilton v. Hamilton, having exercised the right he had, as against the tenant, to follow and distrain the goods, and, having given the sheriff the required notice of his rent, .it is difficult to see why, on principle, the sheriff, having the proceeds of the sale in his hands, should have been allowed to withhold the rent from the landlord. The decision of the court in that case went no further than that, and affords no warrant for the assumption that the tenant or strangers would be upheld in selling the goods which were, as against them, subject to distress, and depriving the landlord of his rent, under the protection of a sheriff's levy.

Hamilton v. Hamilton was also relied on for the position that, by the levy, the property in the goods was changed, and that thereafter the goods were not the goods of the tenant, within the meaning of the statute. *Rev., p.* 309, § 8. The observations of Mr. Justice Potts on that subject were so completely aside from our statute that they must be re-garded as *obiter dicta,* in the fullest sense. The statute of Ann made the sheriff liable only for the rent due at the

time of the levy of the execution. The act of 1795 was, in that respect, a transcript of the English statute. *Pat. L.*, *p.* 163. But, by a supplement passed February 15th, 1820, the act of 1795 was amended, and the landlord's right to payment of one year's rent was extended to rent which had accrued up to the day of the removal of the goods from off the premises. *Rev. L.*, *p.* 666. The original section and the amendment were, in the Revision of 1845, incorporated in one section, (*Rev. Stat.*, *p.* 86,) and the section as drafted in the Revision of 1845, was retained in the Revision of 1874. *Rev.*, *p.* 570, § 4. As the law stood when Hamilton *v.* Hamilton was decided, a landlord had the right to the payment of all the rent due at the time of the taking of the tenant's goods and chattels by the sheriff, by virtue of his process of execution, " or which had accrued up to the removal of the goods from off said premises," not exceeding one year's rent. The landlord's right to have his rent satisfied and paid applied as well to rent which had accrued at the time the goods were removed or sold, as to rent due at the time the sheriff made his levy; and, in a claim by the landlord against the sheriff for rent, it was entirely immaterial whether the property in the goods was or was not changed by the levy. The statute is explicit on that subject.

Nor is the proposition that the property in goods taken in execution is changed by the levy sound in law. The doctrine of the law is that the sheriff, by his levy, acquires a property in the goods seized, but it is only by a special and qualified title. By his levy, the sheriff acquires a lien on the goods seized in execution, and such property in them as will enable him to sue in trespass or trover for taking the goods away. *Wilbraham* v. *Snow,* 2 *Saund.* 47 *a ; Casher* v. *Peterson,* 1 *South.* 317 ; *Lloyd* v. *Wyckoff,* 6 *Halst.* 218, 222. But the title of the defendant in execution is not wholly divested by the levy. If the goods are left in his possession by the officer, for his use and subject to his control, the owner, as was said by Chief Justice Green, " has, both in fact and in law, such possession as will enable him to maintain trespass ;

he has clearly such an interest in the goods as entitles him to an action for their destruction." *Browning* v. *Skillman,* 4 *Zab.* 351, 355. If the sheriff sues in virtue of his special property and constructive possession, as against a stranger having no right in the property, he will recover the full value of the goods, holding the balance beyond the amount of his lien, as trustee for the defendant in the execution, as general owner; but if his action is against the defendant in execution, or some one claiming under the latter, as a subsequent mortgagee, or an officer having a later execution, the sheriff will recover damages only to the extent of the amount of his lien. *Sedgw. Dam.* [482] 602; *Mayne Dam.* 300; *Spoor* v. *Holland,* 8 *Wend.* 445; *Russel* v. *Butterfield,* 21 *Id.* 311; *Outcalt* v. *Durling,* 1 *Dutcher* 443, 448.

Nor does the law require that the tenant shall be the absolute and unqualified owner of the goods, in order to warrant distress for rent under the statute. Goods on the demised premises of which the tenant is owner jointly with a stranger, may be distrained for rent, but only the interest of the tenant can be sold. *Allen* v. *Agnew,* 4 *Zab.* 443. In that case, Chief Justice Green, speaking of the provisions of the statute which authorizes a landlord to distrain the goods and chattels of the tenant, and not of any other person, said : "The design of the statute was to alter the common law so far, and no farther, as to exempt the property of third persons from liability for the debt of the tenant; * * * the utmost effect that can be given to the language of the statute is to exempt the interest of the third party in the goods from being applied to the payment of the rent." Mr. Justice Elmer, in the same case, speaking of the change made in the common law by the statute, said : "Only the tenant's goods and chattels can be distrained, and they are not to be kept merely as pledges, but they are to be appraised and sold to make the rent and charges ; the machinery differs somewhat from an action and a judgment and execution ; but a distress for rent is now, in effect, a seizure and sale of the tenant's property to pay his debt; and I see no more difficulty in seizing and selling the

interest of the part owner by one mode than by the other.'"
A mortgage of chattels is, in law, for certain purposes, a con-
veyance of the legal title; and yet a landlord may distrain
the interest of the tenant in goods and chattels which he has
mortgaged to third persons, and may sell the tenant's interest
in them for the payment of the rent. *Woodside* v. *Adams*, 11
*Vroom* 417.

In the case under consideration, the defendants are in no-
position to defend, in right of the sheriff or as his representa-
tives.   When the distress was made, the plaintiff in the exe-
cution, his attorney and the tenant, were in the act of selling
the goods as the property of the latter, without the knowledge
or consent of the sheriff.   The sheriff testified that he gave
no consent to the sale; that the first information he had of it
was after the sale, when he found that his neighbors had pur-
chased the goods.   If the parties represented the sheriff in
the transaction, due notice of the rent was given, and the
sheriff would be liable for the rent.   Having wholly ignored
the sheriff's levy, and sold, in defiance of it, these defendants
cannot set up the sheriff's levy as a shield for their wrongful
acts.   The statute which gives the landlord a right to the
payment of one year's rent before the removal of the tenant's
goods, was designed for the more easy and effectual recovery
of rents, and the law will not countenance the use of a sher-
iff's execution and levy by third persons, to accomplish, by
indirection, an act which the statute prohibits the sheriff from
doing directly by means of his execution.   In *Van Horn* v.
*Göken*, 12 *Vroom* 499, this court held that, as against the
plaintiff in the execution, who had purchased at a sale under
the execution, the landlord was not put to his action against
the officer to whom notice of the rent had been given, and that
he might, notwithstanding the sale, prevent the removal of
the goods until the arrears of rent were paid.

The first question propounded in the certificate is answered
in the affirmative.

The second question relates to the legal effect of the acts
of the landlord in making the distress; the third to the legal

consequences of the acts of the defendants in interfering with the distress.

One of the plaintiffs and their attorney, on the day of the sale, went upon the premises demised, where the goods were, and, when the sale was about being commenced, gave notice of the claim for rent and tried to effect a compromise. Failing in that, they made an inventory of the goods. They saw some of the goods, and obtained a list of the rest from the defendants' advertisement of sale. A notice of the distress was served on the tenant and on Mr. Westcott, who was conducting the sale. The notice was also put up on the premises. Mr. Westcott said that the sale should go on, and gave notice that he would hold the plaintiffs responsible for any diminution in the sale of the goods from what they would have brought if the notice had not been given. The plaintiffs then desisted from further proceedings under the distress, and the sale went on, all the property being sold except a bar-pump. We think these acts of the plaintiffs were a sufficient distress. No precise act or form of words is essential to a distress, and a distress may be made without actual seizure. *Dod* v. *Monger*, 6 *Mod.* 215; *Knowles* v. *Blake*, 5 *Bing.* 499; *Cramer* v. *Mott, L. R.,* 5 *Q. B.* 357. Where a landlord to whom rent was in arrear, on hearing the tenant and a stranger dispute about the sale of an article on the premises, declared that "the article should not be moved until my rent is paid," it was held that the distress was well commenced by these words. *Wood* v. *Nunn*, 5 *Bing.* 10. The landlord's steward and clerk having gone upon the wharf where the tenant had separate parcels of goods, and said that they intended to distrain, and left a notice of distress, with a statement of the goods distrained, this was held to be a sufficient seizure in an action for an excessive distress. *Swann* v. *Earl of Falmouth*, 8 *B. & C.* 456.

The proof is ample that a distress was made. The more important question is whether there was such an impounding or otherwise securing of the distress as to support an action upon the statute. The statute provides "that if any pound-

breach or rescous shall be made of any goods or chattels or other things *distrained for rent and impounded or otherwise secured* by virtue of this act, the person or persons aggrieved thereby shall, in a special action on the case for the wrong thereby sustained, recover his, her or their treble damages and costs of suit against the offender or offenders, or any of them, in any such rescous or pound-breach." *Rev.*, *p.* 310.

By the common law, rescous and pound-breach were not only civil injuries for which an action would lie, but were also indictable offences, though there was no actual breach of the peace. 2 *Chitty's Cr. L.* 204; 2 *Chitty's Burn's Just.* 312. But neither the civil injury nor the criminal offence would arise unless the goods distrained were taken from the possession of the bailiff after the distress was completed, or from the pound or place where they were secured after the goods were impounded. "The writ of rescous lieth where a man doth distrain for rent or service, or for damage feasant, and would impeach or impound the cattle, and the other party doth rescue them or take them from him, he shall have the writ of rescous." *Fitzherbert Nat. Bre.* 230. "There can be no rescous but where the party has had the actual possession of the cattle or other things whereof the rescous is supposed to be made; for, if a man come to arrest another, or to distrain, and be disturbed, regularly his remedy is by action on the case." 1 *Inst.* 161 *a*; 8 *Bac. Abr.* 581, *tit.* "*Rescue*," *B.* Goods cannot be rescued before they are in possession of him who distrains; for if he is prevented from making a distress, an action on the case lies, not rescous. 3 *Com. Dig.* 116, *tit.* "*Distress*," *D* 5. If a landlord distrain goods for rent, and quit them for two or three intervening nights, the taking is not a rescue contrary to 2 *Wm. & M., c.* 5. *Dod* v. *Monger*, 6 *Mod.* 215. A rescue was returned *quod arrestavit* and quashed because not said *et in custodia habet. Sid.* 332.

An action for treble damages and costs for pound-breach and rescous was first given by 2 *Wm. & M., c.* 5. Our statute is not in exact terms a re-enactment of the English statute. The last-named act provided for an action with treble dam-

ages and costs " for any pound-breach or rescous of goods or chattels distrained for rent." Our statute has added another qualification—that they shall be goods, chattels or other things distrained for rent, " *and impounded or otherwise secured by virtue of this act.*" The phraseology of our statute may be due to a purpose to make its provisions conform to the provisions of 11 *Geo. II., c.* 19, § 10, now the ninth section of the act concerning distresses, which authorizes the landlord " to impound or otherwise secure " the distress on the premises. But nevertheless, the action, though not in a technical sense a penal action, is a statutory action with consequences which are penal, and is subject to the rule of law that a party who makes his right under a statute must show a case within the terms of the statute.

The distinction between a distress and the impounding is a distinction that affects the substantial rights of parties. Where the landlord has entered to distrain, a tender of the rent in arrear will make the seizure unlawful; and where he has distrained, if he refuses to deliver up the goods after a tender, the subsequent detainer is wrongful; but if the goods be once impounded, the tender comes too late, (*Com. L. & T.* 409,) unless, upon the equity of the statute, it be made within five days after the impounding. *Johnson* v. *Upham,* 2 *E. & E.* 250. If there be anything wrongful in the distress, the tenant may rightfully rescue his goods before the impounding; but if the distress be once impounded the goods cannot be taken, though the distress was without cause. *Wood's Institutes* 186; *Parrett Nav. Co.* v. *Stower,* 6 *M. & W.* 564; *Ladd* v. *Thomas,* 12 *A. & E.* 117. The distinction between the distress and the impounding was not abrogated by 11 *Geo. II., c.* 19, (*Rev., p.* 310, § 9,) which authorizes the landlord to impound or otherwise secure the distress upon the premises. That statute does not relieve the landlord from the necessity of impounding or otherwise securing the distress to effectually protect his rights; it only empowers him to turn any part of the premises upon which the distress is taken into a pound *pro hac vice* for securing the distress, (*Com. L. &*

*T*. 408,) and since the statute the English courts have recognized the distinction between the distress and the impounding as still subsisting and controlling the rights of the parties. *Firth* v. *Purvis*, 5 *T. R.* 432 ; *Tennant* v. *Field*, 8 *E. & B.* 336.   In the first of these cases, which was an action for pound-breach and treble damages and costs, under 2 *Wm. & M., c.* 5, the tenant made a tender and then retook the goods. The court held the tender to be too late.   It appeared in the case that the goods distrained were four pipes of beer, and that the landlord had put his mark on the barrels before the tender, and was still upon the premises.   The court thought this a sufficient impounding under 11 Geo. II.   In the other case cited, the goods distrained were the furniture of a lodging-house, and the landlord's bailiff, at the request of the tenant's wife, left the goods in the rooms where they were found, in order not to disturb the lodgers.   The tenant ratified this arrangement.   A tender of the rent was afterwards made, and it was held that, there having been a distress and impounding, the tender was too late.   But the decision of the court was distinctly put on the ground that the goods, instead of being secured in an apartment of the house, were left as they were by the tenant's consent, and the bailiff put a man in possession.

I think it is clear that no action for treble damages and costs can be maintained under our statute unless, in the first place, the goods and chattels have been taken in actual possession by way of distress, which was an essential ingredient of an action for a pound-breach or rescue at common law; and unless, in the second place, the distress has been consummated by having the goods and chattels impounded or otherwise secured upon the premises.   For acts of interference with the distress before the goods have been impounded or otherwise secured, the landlord's remedy is by action at common law for single damages.  He cannot recover upon the statute, and have the treble damages and costs unless he shows that he complied with the statute.   *Anon.*, 1 *Ld. Raym.* 342.

The evidence is, that at the time the distress was made. the the goods were scattered about the premises—some in the

barnyard, some under the shed and some under the porch. No possession of the goods was taken, except constructively by the inventory and notice. The landlord and his attorney saw part only of the goods ; the rest they never saw, and took the list of them from the defendants' advertisement. Whilst the acts of the plaintiffs amounted in law to a distress, and the acts of the defendants were such as to lay the foundation of an action, there was no impounding or otherwise securing of the goods distrained, so as to entitle the plaintiffs to an action for treble damages under the statute.

The fourth question relates to the sufficiency of the proof that the goods distrained were the property of the tenant. The evidence is, that a short time previous to the day of the distress, the tenant had given in the property to the sheriff as his property, to be levied on. There is no evidence that the ownership of the goods had been changed in the meantime. They seem to have been sold as the tenant's property, and the sheriff's execution and levy were put in evidence as part of the defendant's case. Indeed, the tenant testifies that the goods belonged to Westcott, his father, who was the plaintiff in execution, and the sheriff; and there is no proof that either of these persons had any right in the goods except under the sheriff's levy. The proof of the tenant's ownership of the goods was sufficient to justify the judge in directing a verdict.

The fifth question relates to the amount of damages recoverable. It has already been shown that the plaintiffs are entitled to single damages only. The proof is that the goods distrained were of a value equal to the amount of the rent. All were sold by the defendant except a bar-pump, said to be worth $130. The defendants are not entitled to a deduction for the value of the pump. They were wrong-doers, and their acts were such as to justify the plaintiffs in giving up the distress and holding the defendants liable for the consequences. The amount the plaintiffs might have realized out of their distress, which was wrongfully interrupted, is the measure of damages in such cases. Nor can the defendants be allowed a deduction on account of the tenant's right of exemption. The

---

privilege of exemption is personal to the tenant, and was not claimed by him in the mode prescribed by the statute.    *Van Horn* v. *Göken*, 12 *Vroom* 499, 504.

The sixth question presents the question of practice—whether the rule to show cause should be made absolute or be discharged.   The plaintiff having shown substantial grounds for a recovery, and the only error in the verdict being in the amount of the damages, if the plaintiffs will consent to accept single damages and costs, the pleadings should be amended and judgment be entered for single damages, viz., the amount of rent due and interest, with costs.    *Firth* v. *Purvis*, 5 *T. R.* 432 ; *Westervelt* v. *Demarest, ante pp.* 37, 40.   Otherwise, the rule to show cause should be made absolute for excessive damages.